Are we ready to proceed, Michael? Yes. Okay, I call case number 19-1825, Rothschild Connected Devices v. Coca-Cola Company. Mr. Carey, whenever you're ready. Thank you, Your Honor, and good morning to all of Your Honors, and may it please the Court. The first and main issue in this appeal is claim construction regarding the claim term user interface module, which appears in Claim 11, which is the only independent claim asserted in the case. This Court reviews claim construction issues de novo. Here, District Court incorrectly construed user interface module in several respects. It improperly limited user interface module to direct communications only, and it improperly required the user interface module to be physically part of the beverage dispenser. Now, the case implicates a lot of important legal principles, which is well established in the history of this Court, including that a patentee is entitled to the full scope of the claim language. Let's assume that the District Court got the claim construction wrong. As I understand it, you say that the user interface module here is satisfied by two different features of the Coca-Cola device. One is the touchscreen, and the second one is the app. Is that correct? That is correct, Your Honor. Okay. Let's take the touchscreen first. Under your preferred claim construction, that would be a component that enables communication between the user and the dispenser. With respect to the user identification, the way I read the record, that is information received by the dispenser. I guess I'm wondering, with respect to that theory, how is it that the touchscreen is enabling communication when it doesn't communicate the user identity to anybody? Your Honor, the user interface module as recited in Claim 11, the actual claim language recites a user interface module configured to receive an identity of a user and an identifier of the beverage. So the claim language is satisfied when the user interface module receives the identity of the user. That wasn't your theory. Your theory and the claim construction that you urged required that it enable communication between a user and a dispenser. It does. But is it correct? I understand that the touchscreen does receive the user identity, but is it correct that it doesn't do anything with it? It doesn't communicate it anywhere else? Well, the user... Is that true? It's not true that it doesn't do anything with it, Your Honor. It does do a variety of things with the information. So the touchscreen is on the outside of the dispenser housing. The user can walk up to the touchscreen. And the fact that it's a touchscreen, the user can press certain areas of it and get a reaction. No, but you're not answering my question. My question is about the user identity. What does the touchscreen do with the user identity information? It receives the user identity information and the beverage mixes that the user has previously set up to correspond to their favorite mixes. And it presents that user's mixes on the screen. No, but it does not present the user's identity on the screen, right? It presents the beverage information on the screen associated with that user. Answer my question. It does not present the I think that's correct, Your Honor. It doesn't give the user's name, but the beverage identifiers are presented. And the claim only recites that it received the user identity, not do anything more with the user identity. It doesn't have to communicate it? The claim simply recites the user interface module configured to receive the identity of the user. Yeah, but your claim construction said that it has to enable the communication between the user and the beverage. It does that. How does it do that? It does that by being a touchscreen that the user interacts with. The entire session for customizing a beverage with this accused product is called a handshake. And there's a couple of record exhibits that describe very succinctly, you know, how that works. Once the user walks up to the beverage dispenser, scans the mobile app, and then information corresponding to that user's favorite beverage mixes are sent down to the machine and then transferred to the user interface touchscreen and presented to the user. He then selects which beverage option he or she feels like at that particular time. So the claim recites only that the user interface module received the identity of the user and the identifier of the beverage. It does those things and it does more. It then presents the beverage options to the user. That's not recited by the claim language, but it does do that. What about your other theory about the app? The phone is not part of the user interface module, right? The user's phone is not. The hardware of the phone is not. But the app is a piece of software that Coca-Cola makes and distributes, solely designed to be used with the Freestyle machines. So it is part of the Freestyle dispenser system. Isn't this a problem for you? I mean, assuming your claim construction holds, where the user's phone can be claimed as part of the user interface module? I'm sorry, I didn't quite catch that. I'm sorry. Could you please repeat the question? Sure. Coca-Cola is not itself supplying the cell phone. Correct. Right. So how do you get around the requirements of a case called Centillion in terms of just providing the software but not the cell phones themselves? Well, we're not alleging anything about the Freestyle mobile application, which is software that Coca-Cola creates and distributes, that that is a component that satisfies the user interface module limitation. So the app could be on a phone, it could be on an iPad, it could be on something. We're not calling any of that other part of the accused product that Coca-Cola is infringing. But they are distributing the app and they make the app. But they have a third party to make the app. It's entirely the customer on whether they want to install and operate the software on their phone, right? That's correct. Okay. But this isn't a method claim. It's not a method claim and it's a system claim and it's met when, you know, all the components of the system are made, used, or sold by Coca-Cola. So here, Coca-Cola has, you know, the district judge ruled in favor and denied summary judgment on all the other claim elements that had been raised. And as for this element, user interface module, this is a Coca-Cola. So the fact that it doesn't sell the phones is not material in our view. But in the Supreme Court's Microsoft case, it specifically held that software wasn't a component. They're dealing with 271F. That is, I am familiar with that case somewhat, Your Honor. I do recall them talking about that in that context. That's not an argument that Coca-Cola has advanced in this lawsuit to date. Maybe it's something that they'll latch on to later, but they haven't made any argument of that nature at this point. So it hasn't been any development below in the district court about that potential issue. Can I ask you, I mean, you're assuming we were to agree with you, I'll just finish my question and I'll allow you to answer it, even though your initial time is up. Assuming we agree with you, it's really because the claims here and the spec are enormously broad. Have there been 112 issues in connection with this claim? I know it went down on summary judgment, but there are 112 issues lurking in the background, depending on what the claim construction is. I don't recall about 112 specifically, Your Honor. I do recall specifically that on summary judgment, Coca-Cola moved in part for summary judgment of invalidity based upon various anticipation and obviousness theories predicated on prior art. The district judge denied the summary judgment motion as to all of those invalidity grounds. Those were 102 and be able to pursue in this raised 112 arguments for purposes of a future trial. They may have, I just don't recall one way or the other. They didn't raise it on summary judgment, though, Your Honor. All right. Thank you. We'll wait for the remainder of the argument, but I'll hear from your side. Thank you, Your Honor. Thank you, Your Honor. Mr. Nichols? Thank you, Your Honor. If it may please the court, I'm going to use the bulk of my time to address the claim construction issues and the court's grant of summary judgment. If I have time remaining and the court has questions, of course, I'll address the arguments that RCI has made regarding the abuse of discretion issues. That is, whether the dependent claim should have been that Coca-Cola should have been granted summary judgment on the dependent claims or that the court should have denied RCI's motions to compel. I think those have been addressed pretty readily in the red brief. Your Honor is right. They weren't raised by your friend in his argument. Right. Thank you, Your Honor. In its blue brief, RCI quotes the deposition testimony of the 377 Patents inventor, Mr. Rothschild, and he tells a story about how James Smith used the beverage dispenser of Claim 11. He says, quote, a beverage dispenser at the time I invented this invention that's the subject of this litigation was not able to personalize her beverage if the beverage dispenser didn't know that Lee Rothschild was approaching the machine. He further testifies that the conventional beverage dispenser, quote, didn't know that Jane Smith was approaching the machine and that Jane Smith had a certain pre-stored desire that Jane wanted her Pepsi with a little extra lemon. And that's in the blue brief at page three. There's two terms from Mr. Rothschild's story that I think are important to understanding the claim construction dispute. The Pepsi from Mr. Rothschild's story is the identifier of a beverage and Jane Smith's pre-stored desire with a little extra lemon is the beverage product preferences of Claim 11 or what the patent shortens to BPP. Now, I want to jump straight to the central issue here on claim construction, which is how the beverage dispenser of Claim 11 obtained the identity of the user and the identifier of the beverage. And for brevity, I will refer to those two collectively sometimes as identity information. The reason that this claim construction dispute is important is as Judge Dyck has focused on because the accused product Coca-Cola's freestyle dispenser can't, the user of that product can't identify himself to the beverage dispenser. Instead, the user uses a cell phone to log into Coca-Cola's Web site and tells the Web site which Coca-Cola freestyle dispenser he is standing in front of. And then the Coca-Cola server sends information to that user down to the dispenser that's been identified by the user. The freestyle does not enable direct connection, direct communication rather between the user and the dispenser. And the freestyle user cannot use the freestyle dispenser's user interface or the touch screen to input an identity of a user or identity or identifier of a beverage. So the court granted summary judgment below of non-infringement because, quote, RCBI has not shown that the freestyle has a component that the user interacts with to input his or her identity and the beverage preferences. Now, RCBI's core argument here is that the user interface of claim 11 can receive this information, this identity information from anywhere, literally anywhere. But there's nothing in the spec or anywhere else in the intrinsic record to support the notion that the user interface module can receive the user's or the beverage identifier from anywhere else but the user. And the case that this court has, this court's case, Convo versus Compact Computer is... You know, I'm sorry to interrupt. I'm finding this confusing and that's not your fault. It's probably mine. But we're talking, I know we're talking about claim construction and I know this case is confusing because all of the claim construction arguments seem to merge with all the infringement arguments looking at the accused product. But can we start, can you go back and start with what the district court held in his claim construction? I mean, two pit points of dispute are that he says because of the word comprising, it must be a physical component of the beverage dispenser. And the other thing he concluded was near and far and you know what I'm talking about. Can you defend those because I'm having, I have a concern about those aspects of the court's claim construction? Sure. So the construction, the court's actual construction is that user interface module means a component of the beverage dispenser that enables direct communication between the user and the dispenser. And so the first part you focused on, your honor, the component of the beverage dispenser, the court did not say it is a physical component of the beverage dispenser. The court mentioned the physical connection or the co-location of the user interface and the beverage dispenser, but that was in the summary judgment order. In the claim construction order, the judge held that it means a component of the beverage dispenser. I don't think that's controversial, but what he was trying to identify or trying to establish there is that it could not be something else like a user's cell phone or an app that the user installed on his cell phone. The second part of it is that the user interface module is a component that enables direct communication between the user and the dispenser. RCI doesn't disagree with anything there, except for the term direct. And the reason that the court put the word direct in there is the same reason that the district court in the convolve case put the word site into its definition, which is to suggest that the site is the location or the place at which a user actually selects an operating mode in convolve. And the court in that case emphasized that the claim construction was user interface, not just interface, and that the adjective user had to distinguish between different kinds of interfaces. And the same thing applies here. The user interface module must give the information that claim 11 requires that it receives. It must receive that from the user. And just as in convolve, the court used direct here to emphasize that the user interface is the interface that the user interacts with, not some subsequent interface or components that merely execute the user's The convolve case specified that a construction of user interface that includes a subsequent device-to-device interface involved in the execution of a user's selection effectively reads the term user out of the claim language. And I believe that's where Judge Dyke was going with some of his questioning. No, it was not where I was going. I think the problems with district court's claim construction, what I was asking was whether under the patentee-owned claim construction of the blister, of the touchscreen, whether the touchscreen does anything with the information about the user identity. And apparently, it doesn't. That's absolutely correct. It does not do anything with it. What I was going to suggest, Judge Dyke, is that the touchscreen, the theory that the plaintiff has put forward on infringement, and I'm sorry to mix this up for one second, but the infringement theory is that the user interface or what he calls the blister computer, which we dispute that that's the user interface, but the blister could receive the user, the identity of the user from somewhere else besides the user. And in that theory, it would come from, for example, the communication module. But that is contrary to what this court held in Convolve. In Convolve, what was important is that the user interface was used by the user, and that's where the selection was made. Here, the selection is the user identification and also the identifier of a beverage. And those cannot come from anywhere else but the user under the Convolve analysis. Convolve analysis applies just the same as here to eliminate the possibility that, as Mr. Carey was arguing earlier, that it would be sufficient for infringement that if the user, the identifier of a user came from the user's cell phone to a server, from the server to the communications module, from the communications module to the user interface module. That is not direct, and that also eliminates the user. Well, Mr. Nichols, the problem I'm having is what you're saying, it may make sense, but the claim is very broad here, and the specification is very broad. So, your statement may make sense as a common-sense proposition, but what is there in the claim or in the specification that would limit this to what you're suggesting? Right. So, looking at the claim first, the only function of the user interface module is to receive the identity of the user and the identifier of a beverage. That information is then provided to the communications module, which transmits the identity of the user and the identifier of a beverage to the server over network and receives back from the server the beverage product preferences, or BPP, based on the identity of the user and the identifier of the beverage. Then the communication module communicates the user-generated beverage product preferences, which you got from the server, to the controller. The controller actuates valves and mixes up beverage, and that, too, is based on your beverage product preferences. So, the claim itself says that the user interface module is what receives the identity of a user. The only way it can receive it, because of the term user interface module, is from the user. Now, if we look at the specification, so that's the claim. The user interface module receives an identity of a user or identifier of a beverage from anywhere else except directly from the user. What does directly mean in this context? I mean, CONVOL contemplated that it would come from the user but could be indirect. So, what is the word directly? What job is it doing here in this claim construction? Right. Directly has the purpose of the court's use of the district court's use of the term direct was to show that the same thing is in CONVOL, where the court used, in that case, site. Now, the directly or indirectly that we find in CONVOL was from the prior district court's construction from its 2005 Markman order, but the federal circuit in the CONVOL case in 2016, the CONVOL appeal, said that the word indirectly was included because the district court intended to avoid pedantic arguments that a graphical user interface is not a user interface just because the user is interfacing with the mouse and the mouse is interfacing with the computer. The word indirectly was not meant to undo the construction, and that is that the information had to come from the user or there was no purpose for having the adjective user as part of the term user interface. The same thing applies here. And, you know, could the court use the specification here to support the limitation directly? The specification doesn't use the term directly, but every embodiment in the specification, including the embodiments that RCDI points to incorrectly, show that the beverage dispenser must receive the identity of the user directly from the user. So, if you look at the embodiment, this is Appendix 104, Column 7 of the patent. These are embodiments that RCDI has pointed to, Your Honor. If you look at, trying to find the 32, starting at 32, it says in one embodiment, the identity of the code may be transferred where the user may download the code to a mobile device, for example, a personal digital assistant, mobile phone, et cetera, and the mobile phone will wirelessly transfer the code to the user interface module and or the communications module when the mobile device is within range of the dispenser. Now, RCDI mentions that as... That sounds like this situation. What's the matter? The matter is that the phone is transmitting wirelessly when it's within range of the dispenser. That's not over the cellular phone, cellular telephone line, and it is directly to the user interface rather than up through the cellular system to a server, to the communication device, and then down to the user interface. Before you run out of time, I just wanted to give you a moment to address the point that Judge Dyke, I think, and I raised about the Centillion case and the Microsoft case in terms of direct and indirect infringement if we're talking about the cell phone here. Right. I mean, we obviously... Mr. Carey mentioned that we... I'm sorry. Mr. Carey mentioned that we had not raised the issue of distinguishing between software and the cellular telephone. Well, the reason we haven't is because he's only accused the cellular itself was infringing, and so we do... We will depend on the differences between software and hardware as mentioned in those cases, but that's not been Mr. Carey's allegation up to now. This is the first time that we've heard RCDI admit that the phone is not the user interface module or at least part of the user interface module. Thank you, Your Honor. Thank you. Mr. Carey, will we start your rebuttal time if you need it? Yes, Your Honor. Thank you very much. Just a couple of points. I want to correct what I believe are some inaccurate statements that my colleague made in his argument. First, principally two, the first being Mr. Nichols said that the judge's definition of user interface module does not include the physical part of the dispenser limitation. That's a very inaccurate treatment of the claim construction order because just a review of the claim construction order, which is at Appendix 74, 75, and 76, there are... The district court there in explaining his construction of user interface module no less than three times explicitly states that the user and physically a part of the dispenser. That limitation is all over the claim construction order. It was repeated in the summary judgment opinion as well. For Coca-Cola to argue that it's not part of the construction is simply not accurate. Another thing I wanted to mention and correct, the statement that the touchscreen does not input beverage identifiers into the touchscreen is simply not how it works. Just like the patent describes at Column 8, Lines 33 to 36, the touchscreen of the accused device presents all of the user's mixes. The mixes are, you know, I like my favorite beverage is Coca-Cola with lemon, number one. Number two, I like 60% Coke, 40% Sprite, that kind of thing. So when you walk up to the dispenser and you log in with your app, those different mixes are presented to you. The user then touches the touchscreen to select the one they want poured right then and there. And that selection is inputting the beverage ID for the mix that you just picked. So the statement that the user doesn't input the beverage IDs in the touchscreen is simply incorrect. I'd like to talk for a minute about this Convolve case because this case I think has been wrongly cited by Coca-Cola. And in fact, it very much supports the claim construction that we're advancing. In Convolve, there were two accused products, right? There was a Seagate product and there was a Compaq product. And the technology at issue there involved controlling hard drive noise by allowing the user to select the speed. So if you slow the speed down, it would be quieter. And the court was looking at a user interface limitation in the patent at issue there. And the Seagate devices had no user interface whatsoever. There was nothing that the user could interact with that was part of the Seagate device. What the patent owner in that case was trying to say was the user interface were these things that the opinion refers to as the ATA, SCSI, SCSI interfaces. These aren't user interfaces. They're internal computer programs that executed the selection that the user did make somewhere else. And the court in Convolve said, well, the user doesn't interface with those things whatsoever. Those can't be the user interface. All right. So then Compaq, the Compaq devices had a user interface. It's referred to as a graphical user interface. But the claims in Compaq, the claims at issue, the user interface module, there were some claims that required these specific limitations of outputting commands, right? And the Compaq devices had a user interface, but the question was whether the Compaq interface then met the command issuing limitations of the claims. So here, this is why Convolve supports our argument. The case against Seagate failed because there was no user interface at all. There was nothing for the user to interact with. By contrast here, the user interacts with both the touchscreen on the Freestyle machine and the user also interacts with the mobile app. So both of those are things that the user interacts with. Both of those are things the user interacts with. The claims against Compaq were met except for the ones that didn't have this command issuing limitation. Those claims, there was no infringement. But for the claims where there were no command issuing limitations, the user interface, the graphical user interface in the Compaq devices were found to be infringing. And so both of those reasons, Convolve, I believe, and Convolve also had a specific construction that the communication between the user and the interface could be direct or indirect. And here, you know, it should likewise not be limited to just direct because the specification doesn't limit it to direct and specifically says that any known or future technology could be used for the communications. There's simply no principled reason to say that Wi-Fi communications can be covered but not an Internet communication. The patent can work either way and there's no reason to draw that distinction. A Wi-Fi communication also goes from user to Wi-Fi router to destination. The fact that the Wi-Fi router is sitting there in the middle is not relevant. And in fact, they even, so there's no further questions. I'll wrap it up. Thank you. Thank you both sides and the cases.